Appellant, Ms. Rowland for the Appellant, Mr. Coleman for the Appellee. May it please the Court, and with the Court's permission, I'd like to start by addressing the government's argument that Mr. Gross has waived his legal claim. And I'd like to discuss our three answers to that argument. First, that the issue is preserved for review because Mr. Gross presses the same legal theory on appeal that he pressed below. Second... Could you talk a little closer to the mic? Thank you. I'd like to address, first, that the issue is preserved because he presses the same legal theory on appeal that he pressed below. Second, that the District Court's ruling logically and necessarily means that it ruled on this argument. And third, that the District Court actually ruled on the argument. First, a claim is not waived when the defendant presses the same legal theory on appeal that he raised below. Mr. Gross made a Fourth Amendment argument in the District Court that he was seized without a warrant and that the seizure was not justified by the Terry exception to the warrant requirement. In support of that claim, he argued that the seizure occurred at the moment that Officer Katz got out of the car. On appeal, he makes the same legal claim using the same set of facts and asking the court to apply the same set of legal factors to those facts, but argues that the seizure occurred a few seconds earlier. It is the same claim. This case is not like cases in which the court has found a waiver where, for example, the defendant argued below that there was no probable cause and on appeal argued that the warrant was deficient. Or, for example, in the Maurice Williams case that came down earlier this week, where the defendant argued below that the officers should have sought a warrant to search his car after they smelled marijuana, and on appeal pressed that claim and an additional claim that by activating his key fob, that too was a search, a separate search, for which there was no justification. In that case, the court held that he had waived the second argument. Here, it is the same legal claim. So just, if I'm understanding that correctly, so that would mean that no matter how clear the colloquy was before the district judge, there still would have been no waiver. In other words, suppose that what happened before the district court was that the court and the prosecutor, everybody, joined issue on this and said, as I understand your argument, you're only arguing that the seizure occurred after the point in time at which the second defense counsel says, that's correct, we're not making that argument at all. Then you would say, still, there would have been no waiver because it's the same claim based on the same sort of nucleus of operative facts, even if you would have drawn the line at a different place. I would make that claim, but I don't have to make that claim here because what didn't happen here. Yeah, I'm not necessarily saying that would be wrong, I'm just trying to understand the implications of your legal position. Yes, because it's the same legal claim that Terry Stoff wasn't justified on this same set of facts, applying these same legal factors to determine the issue. And in this circumstance, the district court's ruling that Mr. Gross was not seized until some time past the point when Officer Katz got out of the car, necessarily means that it also ruled that he had not been seized in the few seconds before. Well, it only means that if that issue was raised, right? In other words, if everyone was assuming there was no seizure until then, then there's no ruling on what happened before then, right? But by ruling that all the factors at play here, he's walking in a high crime neighborhood, there are four police in a car, they follow him, they shine the light, they ask him if he has a gun, they ask him to lift his clothing, and then Officer Katz gets out of the car. If the district court rules that Officer Katz getting out of the car, that he was not seized at the moment Officer Katz gets out of the car, then he certainly was not seized five It's just the word ruling that you use that's a little puzzling. But I don't want to deliberate. Third, the district court actually passed on the precise way that we are framing the issue on appeal when it ruled that to question the defendant from the car without requesting the defendant to stop and not to move was not a seizure. Turning to the merits, in the circumstances here, a reasonable person would not feel that he was free to ignore the officer's request that he lift his clothing to expose his waist. I won't belabor all of the factors at play since they are in our briefs, but I would like to point out that the interdiction cases on which the government relies don't apply here. In those cases, they involve public transportation, trains, buses, planes, and it's a very different circumstance because people expect to be questioned and would not consider it a seizure. It's common practice back when there were, back when they didn't have kiosks. So what about on a sidewalk? If an officer is just walking up to somebody and asks a question, that's not public transportation, but would you say that at that point the person has been seized just because the officer asked the question, are you carrying a gun? There certainly could be circumstances when that isn't a seizure. But here, given all the factors, and particularly, we're not arguing that he was seized at the moment they said, do you have a gun? But at the moment they said, can you lift your clothing so we can see your waist and see if you have a gun. But that was the moment of seizure. But in all of the interdiction cases... Well, so take that same hypo and take that same fact pattern and put it on the sidewalk. I mean, I know this one happened on the sidewalk. It was on the sidewalk. No, but I mean where the officer's walking rather than saying it from a car. Oh. So it's just a beat officer and he walks up to an individual and says, are you carrying a gun and can you show me your waistband? You would say that there's been a seizure there. I would say that that is a weaker case than the case here where four police officers wearing tactical gear were following him in a car, shining their flashlight on him to get his attention and asking him these questions. If it was one beat officer, if it was Officer McFadden asking a question on the street, that would be a weaker case. Even though we know from... Maybe the case name might be escaping me. I think it's Goddard, but there's a car that comes up to the gas station with multiple officers in it who are uniformed officers, but this court held that there was no seizure at that point of the individual who was at the gas station. I can't recall what the interaction was between the officers and the defendant in that case. The government complains that we haven't cited a case that is precisely like this one and we never will. Each of them have to rest on their own facts. In this circumstance, a reasonable person, and I would argue that a reasonable black man in Washington, D.C., would not feel that he was free to leave when officers confronted him about a gun and then asked for him to prove that he doesn't have a gun by lifting his waistband. That person would not feel free to walk away from the circumstance and ignore the police officers. What about Murat, where it was okay for the officer to ask if the person had drugs in the shoulder bag and then ask to see what was in the shoulder bag? Again, there weren't all the factors here with a posse of police officers. I also would argue that drugs are a bit different than a gun. Asking a person if they have a lethal weapon in a city in which, at least at that time, it was absolutely prohibited. Illegal drugs are also prohibited, but it is more confrontational to ask a person if they are carrying the most lethal weapon a person could carry. Do you think it makes any difference that these officers were part of what was called a gun recovery unit and this was kind of what they did? Mr. Gross was not aware that they were part of a gun recovery unit. I think the court can consider that when it considers the approach that these officers took and the fact that there were four of them in a car. They're not just wearing regular uniforms. They're wearing vests with all kinds of tactical equipment. There's a photograph in the appendix to our brief. Officer Katz, in particular, apparently seeks or at least hopes that defendants will flee because then he automatically has a reasonable suspicion. We know that from his testimony in the D.C. Court of Appeals case that we cited in our brief. They have their methods and the court can consider that in considering their demeanor and how they approached him, but Mr. Gross was not aware that they were part of that unit. Thank you. Thank you. May I please report? Nick Coleman for the United States. I'd like to begin by addressing briefly the question of whether or not appellant has preserved his claim before proceeding to the merits arguments raised by opposing counsel. We'd submit, given that appellant challenged only the actions of Officer Katz and claimed that that was the illegal seizure that took place, that the claim that Officer Bagshaw conducted an independent illegal seizure was not preserved. And here, although appellant's counsel did not expressly say we're not challenging Officer Bagshaw's actions, the district court said in open court and the prosecutor agreed, my understanding is the defendant here is challenging only what Officer Katz did by leaving the car. And appellant's counsel did not correct that understanding at any given time. I think it's also important to note, in fact, even if you look at pages 68 through 69 of the hearing transcript, appellant's counsel, in arguing that Officer Katz had conducted the seizure, took note of the fact that Officer Bagshaw had started to, that officers had been driving away after the initial interaction between Officer Bagshaw and appellant. So can I ask you this? So it seems to me the argument is this. A defendant says, I think a seizure has occurred by virtue of facts A, B, and C. And then the court says, well, are you saying that the seizure occurred before C? And the defendant says, no, I need A, B, and C. And then, but I need all of them because I'm not looking at C in isolation. I'm looking at what happened at A, what happened at B, and what happened at C. And then the court says, well, I've looked at A, B, and C, and together I don't think they constitute a seizure. And the defendant on appeal says, you know, actually, I didn't even need C. A and B were enough. There was a seizure because of A and B. What's lost? The court had every opportunity to look at A, B, and C and decide whether there was a seizure and said that there wasn't. Well, I do think, first of all, something was lost as a practical matter here because the court was never told that Officer Bagshaw was the one who conducted the illegal stop. The issue of whether or not that seizure was even still ongoing by the time Officer Katz gets out of the car wasn't presented to the court. Now, as we've argued in the brief, we think that the stop could be deemed, even if it was a stop, as having ended. But we do think that that's an important fact. This is in the footnote in your brief? We do think, yes, we do think that that's an important fact, that if what Officer Bagshaw did was, in fact, illegal, there is a serious question as to whether or not it could have acted, whether or not it actually leads to what happens between Officer Katz and Appellant. Because, after all, Officer Bagshaw, after telling Appellant to, basically asking if he'll show his waistband, is apparently satisfied. In fact, he tells Officer Katz that he is satisfied. Well, so let's assume, I think I get your argument on independence, but let's assume that away for present purposes and just say that the argument is as I stated it, which is that I think factors A, B, and C together constitute a seizure. And then later on the defendant says, actually I think factors A and B alone constitute a seizure. At that point, have you waived the argument that A and B alone constitute a seizure by first phrasing it as I need A, B, and C? Well, I do think there could be cases where the facts are such that A, B, and C are so intertwined that it doesn't, in other words, there's no way to even parse them out. I don't think that's this case. So, in other words, for your waiver argument to succeed, you think that we'd have to accede to your notion that there's some independence, that it's not an A and B and C case. It's really that C and A and B are not necessarily bound up together, that something happened at the point that Katz gets out to kind of disaggregate the sequence of events. I think that's correct because, although Appellant argues here that, well, we are pressing the same legal theory, they're arguing two distinct events. We're talking about two supposed seizures. One was challenged below, and now a different one is being challenged here. And so we do think that the waiver rules apply. Even if this Court were to reach the merits, however, we do think that this Court's cases and the Supreme Court cases dealing with interdiction and similar cases like Goddard fully establish that what Officer Bagshaw did here was not a seizure. These are officers who do not even, unlike in Goddard, they don't even get out of the car. They remain a full lane of traffic away from Appellant. Officer Bagshaw does not command Appellant to show his waistband. He doesn't tell him to stop. He doesn't say, show me your waistband. He says, hey, it's the police. How are you doing? Can I see your waistband? That's a question. And the District Court found that at no point during this encounter was any peremptory language used. And that finding, we think, shows that this simply wasn't a seizure. This isn't a case where Appellant would have felt that he was required to comply. Do you have any case involving the accumulation of the three things that counsel has pointed to as an aggregate that distinguishes each of the cases saying that A is okay, B is okay. These are different A, B, and C. A is okay, B is okay, C is okay. Do you have a case saying that the following and the focused question on an illegal possession and what the officers were wearing, that that doesn't make a dangerous trifecta? Well, I think in terms of these literal facts at issue here, I think the Ford case we've cited from the First Circuit looks at a very similar fact pattern to what you have here of officers that are driving alongside a suspect asking questions from the car. But I think the interdiction cases establish the principle that applies here. And I guess I take issue with the idea that somehow those were less coercive. I think the interdiction cases where you're talking about officers who are approaching, in some cases they're actually getting onto a bus or a train and from close quarters, and very often it's more than one officer and a passenger who really, as a practical matter, and this is one of the issues that was raised during those cases, as a practical matter isn't going to feel like he can just get up and leave his seat and thus abandon his trip, that nevertheless the Supreme Court and this Court repeatedly held that it was appropriate for officers in those situations to approach, ask questions, announce that they were interdiction officers and that they were looking for drugs. And, in fact, in a couple of cases said that they were also looking for weapons. Lewis was a case, this Court, Drayton from the Supreme Court, where it wasn't just drugs. It was also questions about weapons. And then asking, after having asked whether or not the suspect had such contraband, and asked for permission to look inside the luggage or search the person. I mean, in those cases, which I think would have significantly more coercive potential and would lead a suspect in that situation to have a greater reason to think that they couldn't say no, that here where you're talking about officers who aren't even getting out of their car or talking from a pretty far distance to the suspect who's walking on a public sidewalk, that that's, in fact, less coercive than what was at issue in those cases. So to the extent that Officer Bagshaw's conduct is addressed by this Court, it simply didn't amount to a seizure. If there are no further questions, we respectfully submit that the judgment of the District Court should be approved. Thank you. I understand that you didn't reserve any time, but you can have two minutes. Thank you. I think the argument that, I think the government is creating a false division between Officer Katz and Officer Bagshaw. This was a group of officers taking action literally within a few seconds. After Mr. Gross lifted his clothing, Officer Bagshaw took his foot off the brake. He did not accelerate. He took his foot off the brake, traveled a few feet before Officer Katz said, stop the car, I'm getting out, and did so. The defense counsel never argued that he was only arguing that getting out of the car was the seizure and affirmatively not arguing anything else. His argument is found at the top of page 72 of the transcript. Later, the court and the prosecutor, beginning at the bottom of page 72, engage in a colloquy about where the prosecutor says, as I understand, Mr. Moore is saying the stop occurs at the moment Officer Katz gets out of the argument, gets out. But Mr. Moore does not, the defense counsel does not speak up at that point. If there are no further questions, I think that's all I have. Thank you. Thank you. The case will be suspended.
judges: Brown, Srinivasan, Williams